## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAN YIENGST, | : |
| | : |
| Plaintiff | : DOCKET NO: |
| v. | : |
| | : |
| MATTEL SALES CORP., | : |
| | :     Jury Trial Demanded |
| Defendant | : |
| | : |

## COMPLAINT

Plaintiff, JAN YIENGST ("Ms. Yiengst"), by and through her undersigned attorneys, Peggy M. Morcom, Esquire, James T. Podgorney, Esquire, and Morcom Law, LLC, files this Complaint against Defendant, MATTEL SALES CORP. for violations of the Americans with Disabilities Act of 1990 (as amended) ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Plaintiff alleges and avers as follows:

## JURSIDICTION AND VENUE

1.      Jurisdiction is appropriate in this Court under 28 U.S.C. §1331 and §1367.

2.      Venue is proper because all parties reside or do business in this jurisdiction and all unlawful employment practices complained of occurred in this District.

3.     On October 10, 2022, Ms. Yiengst dual-filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") alleging discrimination pursuant to the PHRA and the ADA.

4.     Ms. Yiengst exhausted her administrative remedies on September 18, 2023 when a Notice of Right to Sue was issued and was received by Ms. Yiengst on that same date. See Exhibit "A" attached hereto.

## **PARTIES**

5.     Ms. Yiengst is an adult individual residing in Jonestown, Lebanon County, Pennsylvania.

6.     Mattel Sales Corp. (hereinafter "Mattel"), is a California corporation with a principal place of business located at 575 Old Forge Rd, Jonestown, PA 17038, and operates as a wholesaler of toys and games.

7.     In July of 2018, Ms. Yiengst was hired by Mattel into the position of Transportation Coordinator, and she was primarily responsible for coordinating and routing customer shipments as well as preparing and completing all necessary paperwork for each shipment.

8.     On May 13, 2022, Ms. Yiengst was terminated from her employment with Mattel.

9.     Ms. Yiengst was at all times qualified for the position of Transportation Coordinator.

10.     Ms. Yiengst's performance at Mattel was exemplary, and she was never subjected to any form of discipline in her nearly four years of employment.

## COUNT I
## Americans with Disabilities Act

11.     Plaintiff incorporates Paragraphs 1 through 10, as though fully set forth herein.

12.     Ms. Yiengst is an "employee" as that term is defined under the ADA.

13.     Mattel employs in excess of 100 individuals, and Mattel is an "employer" as that term is defined under the ADA.

14.     Ms. Yiengst was diagnosed with anxiety in or about April of 2020.

15.     Anxiety is a "disability" as that term is defined under the ADA.

16.     Ms. Yiengst is a qualified individual with a disability under the ADA.

17.     In March of 2020, the United States, including the Commonwealth of Pennsylvania, entered mandatory lockdowns across many private and public sectors due to the COVID-19 pandemic.

18.     Prior to any shutdown or work-from-home orders at Mattel, Ms. Yiengst recognized that COVID-19 could present serious health risks for herself and her husband, who is immunocompromised. [1]

19.     In March 2020, after being sent home for the mandatory lockdown due to the COVID-19 pandemic, Ms. Yiengst was called by her former Director, Jim Anderson ("Anderson"), wherein Anderson asked her to work from home.

20.     Ms. Yiengst's husband was a prior employee of Mattel, and Anderson knew about Ms. Yiengst's husband being immunocompromised.

21.     Anderson did not have any issues with Ms. Yiengst working from home as she could perform all essential functions of her job from her home. Accordingly, Ms. Yiengst permission began teleworking in March 2020 without issue.

22.     Following March of 2020, the COVID-19 pandemic worsened throughout the United States and Pennsylvania, and Ms. Yiengst developed serious anxiety surrounding the spread of COVID-19 and keeping both herself and her immunocompromised husband safe from COVID-19 infection.

---

[1] Ms. Yiengst's husband suffers from carotid artery disease, respiratory issues, and is in remission from cancer of the lung, which render him immunocompromised with regards to the COVID-19 virus. Ms. Yiengst's husband is also 66 years of age and considered a "senior," which also renders him immunocompromised with regards to COVID-19.

23.     In July of 2020, Ms. Yiengst received notification from Diana Loraschi ("Loraschi"), former Human Resources Manager, that Ms. Yiengst was required to return to work in person at Mattel's facility in Jonestown, PA.

24.     Ms. Yiengst explained her and her husband's medical diagnoses to Loraschi, and she notified Mattel that she experienced breathing issues when wearing a mask.

25.     In or about July of 2020, Ms. Yiengst was advised by Loraschi to complete an ADA accommodation form outlining the reasons needed for her to continue working from home.

26.     In or about July of 2020, Ms. Yiengst submitted the ADA accommodation form to Loraschi and Human Resources as advised, and Ms. Yiengst was informed she could continue working from home, as she continued to perform all the essential functions of her job while teleworking.

27.     Over the next two years, Ms. Yiengst and her healthcare provider continued to complete Mattel's ADA accommodation forms as required, and each time Ms. Yiengst was granted the ability to continue working from home.

28.     The accommodation forms submitted to Mattel clearly indicated Ms. Yiengst's underlying medical conditions and disabilities including anxiety and difficulties breathing that limit or prevent her from wearing a face covering and from working in Mattel's office environment.

29.     The ADA accommodation requests also indicated that due to Ms. Yiengst's anxiety, she required an accommodation to continue to work from home for the duration of her employment with Mattel.

30.     Ms. Yiengst provided specific details in her ADA accommodation requests noting that she could not wear a mask, that she suffered from anxiety for which she seeks medical treatment, and that she is unable to go into any area with large groups of people, as her husband's health places him in a high-risk group if he were to contract COVID-19.

31.     Ms. Yiengst's healthcare providers consistently concluded that Ms. Yiengst cannot be in an office environment.

32.     Ms. Yiengst's ADA accommodation requests also indicated that she had the ability to perform all of the essential functions of her job, so long as she is permitted to continue working from home.

33.     Mattel's previous management, Anderson, Loraschi, and Human Resources, including Traci Valerio, Human Resource Manager, ("Valerio") with whom Ms. Yiengst corresponded, were well aware of Ms. Yiengst's medical conditions, and the company had no issues granting Ms. Yiengst's reasonable accommodation of exclusively working from home for a two-year time period.

34.     Beginning in March 2022, after two years of working from home and Mattel having no issues granting Ms. Yiengst's request, Ms. Yiengst began to

receive correspondence from the new Human Resources Manager Valerio, who advised that her working from home was now creating an issue for Mattel. This correspondence from Valerio indicated that the mask mandate was lifted, and Ms. Yiengst needed to return to the office.

35.     In January 2022, Ms. Yiengst was initially contacted by Steve (last name unknown), who was part of the internal Human Resources team, who advised her that Mattel did not have any updated ADA accommodations on file, which was untrue.

36.     In or about May of 2022, Ms. Yiengst was contacted by Valerio, who indicated that Ms. Yiengst's request to permanently work from home would not be possible because other employees had to perform "essential functions of her job for her."

37.     At no time prior to May of 2022 was Ms. Yiengst informed that other employees were performing her responsibilities.

38.     Ms. Yiengst was terminated effective May 13, 2022.

39.     Ms. Yiengst's termination letter from Valerio stated that Ms. Yiengst's accommodation request was for "others to do tasks for you," which was a blatantly false characterization of the ADA accommodation request.

40.     Valerio also indicated that "such an accommodation would require removal of essential functions of your position. We can't continue to have other employees doing these essential functions of your role and responsibilities for you."

41.     One of the central issues Mattel sites in their termination letter is other employees performing Ms. Yiengst's job functions. Ms. Yiengst understood this statement as a reference to the requirement that Ms. Yiengst retrieve documents from the shipping floor to either process internal changes to the documents and/or scan and send these documents, which required approximately seven (7) minutes of her work time each month (160-200 hours).

42.     Ms. Yiengst's position does not exist in order to retrieve documents from the shipping floor for scanning and copying; assigning this task to an on-site employee would appear to have no effect on the employees or Mattel's operation as this is exactly what had been done from March of 2020 to May of 2022 while Ms. Yiengst worked from home. Retrieving documents to scan them is not a specialized function and Ms. Yiengst was not hired for her retrieving and scanning abilities.

43.     The scanning, retrieving, and filing aspect is not an essential function of Ms. Yiengst's job as a Transportation Coordinator.

44.     From March of 2020 to May of 2022, on-site employees have retrieved documents from the shipping floor, copied, and scanned them without

issue while Ms. Yiengst was working at home due to her and her husband's disability.

45.   Ms. Yiengst was granted an accommodation for two years with no reference to any hardship to any fellow employee or Mattel.

46.   Mattel's actions to terminate Ms. Yiengst effective May 13, 2022 because of her inability to work in an office environment because of her and her husband's disabilities and conditions and removing her reasonable accommodation that had been granted by Mattel for two years that allowed her to perform all essential functions of her job is in direct violation of the ADA.

47.   Ms. Yiengst suffers from anxiety directly related to the COVID-19 pandemic and her husband is immunocompromised. Further, Ms. Yiengst is unable to wear a mask because the face covering restricts her breathing.

48.   Mattel also perceived Ms. Yiengst as having a disability as it granted her a reasonable accommodation to work from home from March 2020 to May 2022 in response to multiple ADA accommodation requests due to her and her husband's disabilities and conditions.

49.   All of Ms. Yiengst's medical conditions were outlined in her accommodation request forms and formally acknowledged by Mattel, which granted the accommodation requests to work from home for more than two years.

50.     Mattel initially provided Ms. Yiengst a reasonable accommodation by reassigning her to work from home.

51.     Mattel did not experience an undue hardship.

52.     Mattel violated the ADA by not engaging Ms. Yiengst in the interactive process after January 2022, removing a reasonable accommodation from her that allowed her to easily and successfully function in her position for the last two years, and terminating her because of her disability.

53.     The actions of Mattel and Valerio were intentional and willful when it failed to engage in the interactive process, failed to provide a reasonable accommodation, and terminated Ms. Yiengst's employment as a result.

54.     Mattel did not have a legitimate non-discriminatory reason for denying Ms. Yeingst's request for a reasonable accommodation.

55.     As a result of Mattel's discriminatory actions, Ms. Yiengst has suffered lost wages in the form of front pay and back pay, loss of benefits, exacerbation to her anxiety, humiliation, and embarrassment.

56.     As a direct and/or proximate result of the above-described actions, Ms. Yiengst suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

57.     As a direct and proximate result of the above-described actions, Ms. Yiengst suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, and loss of retirement benefits.

58.     As a direct and proximate result of the above-described conduct, Ms. Yiengst suffered professional injuries including, but not limited to, her professional reputation, professional development and loss of potential promotions, and loss of retirement benefits.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA") VIOLATIONS

59.     Ms. Yiengst incorporates paragraphs 1 – 58 as though fully set forth herein.

60.     Ms. Yiengst is an "employee" as the term is defined under the PHRA.

61.     Defendant is an "employer" as the term is defined under the PHRA.

62.     Anxiety is a "disability" as that term is defined under the PHRA.

63.     Mattel violated the PHRA by not engaging Ms. Yiengst in the interactive process, removing a reasonable accommodation from her that allowed her to easily function in her position for the last two years, and terminating her because of her disability.

64.     The actions of Mattel and Valerio were intentional and willful when it failed to engage in the interactive process, failed to provide a reasonable accommodation, and terminated Ms. Yiengst's employment as a result.

65.     Mattel did not have a legitimate non-discriminatory reason for denying Ms. Yeingst's request for a reasonable accommodation.

66.     As a result of Mattel's discriminatory actions, Ms. Yiengst has suffered lost wages in the form of front pay and back pay, loss of benefits, exacerbation to her anxiety, humiliation, and embarrassment.

67.     As a direct and/or proximate result of the above-described actions, Ms. Yiengst suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

68.     As a direct and proximate result of the above-described actions, Ms. Yiengst suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, and loss of retirement benefits.

69.     As a direct and proximate result of the above-described conduct, Ms. Yiengst suffered professional injuries including, but not limited to, her professional reputation, professional development and loss of potential promotions, and loss of retirement benefits.

70.     As a direct and proximate result of Mattel's discriminatory actions, Ms. Yiengst has suffered lost wages in the form of front pay and back pay, loss of benefits, exacerbation to her anxiety, humiliation, and embarrassment.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff, Jan Yiengst, respectfully requests this Honorable Court to enter Judgment in her favor and against Defendant for damages in an amount in excess of $75,000.00, plus interests and costs of suit as well as the following:

(a)     Exercise jurisdiction over this matter;

(b)     Exercise supplemental jurisdiction over Plaintiff's PHRA claim;

(b)     Order Defendant to reimburse Plaintiff for all salary and benefits lost by her as a result of Defendant's actions, in an amount in excess of $150,000.00, including but not limited to front pay, back pay, and compensatory damages;

(c)     Award Plaintiff punitive damages under the Americans with Disabilities Act;

(d)     Award Plaintiff all costs of this action, including reasonable attorney's fees;

(e)     Award Plaintiff such other and further relief as this court deems just proper and equitable.

Respectfully submitted,

/s/Peggy M. Morcom
Peggy M. Morcom, Esquire
Atty. ID No.: 92463
Morcom Law, LLC
1028 E. Chocolate Avenue
Hershey, PA 17033
Phone: (717) 298-1907
Fax: (717) 298-3232
pmorcom@morcomlaw.com
Counsel for Plaintiff


/s/James T. Podgorney
James T. Podgorney, Esquire
Atty. ID No.: 315848
Morcom Law, LLC
1028 E. Chocolate Avenue
Hershey, PA 17033
Phone: (717) 298-1907
Fax: (717) 298-3232
jpodgorney@morcomlaw.com
Counsel for Plaintiff


Date: 12/15/2023

VERIFICATION

The undersigned hereby verifies that the statements in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the preparation of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made

subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification to authorities.

_____
Jan Ayenga

Date: _10 - 9 - 2023_



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/18/2023

**To:** Jan Yiengst
165 Green Point School Road
Jonestown, PA 17038
Charge No: 530-2023-00352

EEOC        Representative        and
telephone number:

Legal Unit
(267) 589-9707

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
09/18/2023
Karen McDonough
Deputy District Director



**Cc:**
Jennifer Betts
Ogletree Deakins
1 PPG PL STE 1900
Pittsburgh, PA 15222

Devin  Vasquez
Mattel
575 Old Forge Rd
Jonestown, PA 17038

James T Podgorney
Morcom Law
226 W. Chocolate Avenue
Hershey, PA 17033


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 530-2023-00352 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2023-00352 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*